# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

JAKE STEVE MICHEL,

    Petitioner,

v.

UNITED STATES DEPARTMENT OF JUSTICE; ERIC HOLDER; BUREAU OF PRISONS; CHARLES SAMUELS; STACY STONE; and TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:14-cv-91

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Jake Michel ("Michel"), who is currently incarcerated at the Federal Correctional Institution in Bruceton Mills, West Virginia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 while he was housed at the D. Ray James Correctional Facility in Folkston, Georgia. (Doc. 1.) Respondents filed a Response. (Doc. 13.) For the reasons which follow, I **RECOMMEND** Michel's Petition be **DISMISSED** without prejudice and this case be **CLOSED**. I also **RECOMMEND** that Michel be **DENIED** a Certificate of Appealability and be **DENIED** *in forma pauperis* status on appeal.

BACKGROUND

Michel was convicted in the Southern District of Florida after he pleaded guilty to: possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); knowingly using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 13-1, p. 15.) Michel was sentenced to 180 total months' imprisonment. (Id. at p. 16.) He has a projected release date of July 29, 2021, via good conduct time credit. (Id. at p. 13.)

## DISCUSSION

Michel asserts he was transferred to McRae Correctional Facility in McRae, Georgia, on February 19, 2014, and was placed on involuntary protective custody. Michel also asserts that he was sanctioned with 180 days' disciplinary segregation, which meant he had no contact with family and no ability to practice his religion for six months.[1] (Doc. 1, p. 2.) Michel avers he was then transferred to D. Ray James Correctional Facility on September 24, 2014, and he was placed in the Special Housing Unit upon his arrival. Michel contends he was issued an incident report on October 12, 2014, for refusing to obey an order and refusing to stand for count. (Id.) Michel maintains a member of the Unit Disciplinary Committee recommended he have the following sanctions imposed: maximum loss of good conduct time; 180 days' loss of visitation, consecutive to any other sanction; 180 days in disciplinary segregation, consecutive to any other sanction; 120 days' loss of phone and commissary privileges, each to be served consecutively to any other sanction; and an immediate sanction of loss of mattress privileges for 30 days. (Id. at p. 3.) According to Michel, the removal of his mattress for 24 hours a day for 30 days "is inhumane and torturous" and a violation of his Eighth Amendment right to be free from cruel and unusual punishment.[2] (Id.) Michel maintains that, as a result of the sanctions which were imposed, he did not have contact with his family, could not practice his religion, lost good

---

[1] Though Michel mentions his period of incarceration at McRae Correctional Facility, he does not appear to be challenging any incident which allegedly occurred at that facility in this Petition.

[2] Michel overstates the severity of the mattress sanction. By his own submission, Michel was without his mattress and linens from 6 A.M. until 10 P.M., so he was permitted to have these items for eight (8) hours a day. (Doc. 1, p. 8.)

2

conduct time, and suffered from sleep deprivation and cruel and unusual punishment. (Id. at p. 6.) As relief, Michel requests to be released to the general population, to have his good conduct time reinstated, and to be able to practice his religion. (Id.)

Respondents[3] assert Michel's Petition should be dismissed for two (2) reasons: 1) he brings allegations about his conditions of confinement, which are not proper allegations to raise in a habeas corpus petition; and 2) he failed to exhaust his administrative remedies, to the extent he raises any habeas corpus allegations. The undersigned addresses each of these contentions.

**I. Whether Michel Presents Claims Which can be Addressed by a Writ of Habeas Corpus**

Respondents contend Michel is not challenging the fact or duration of his confinement; rather, Respondents assert Michel sets forth claims that his constitutional rights have been violated. Respondents aver Plaintiff's constitutional claims should have been brought pursuant to a civil rights action. The Court agrees.

Despite Michel's characterization of his pleading as one made pursuant to Section 2241, most of the contentions he sets forth reveal that he should have filed his cause of action pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In general, the distinction between claims which may be brought under Bivens and those which must be brought as habeas petitions is reasonably well settled. Claims in which federal prisoners assert that they are being subjected to unconstitutional punishment not imposed as part of their sentence, such as, for example, being denied the right to practice their religion or to be free from cruel and unusual punishment, are Bivens actions, not habeas actions.

---

[3] Respondents allege the only proper respondent in a Section 2241 petition is the custodian of the petitioner at the time he files his petition. This is a correct statement of law. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("[L]ongstanding practice confirms that in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]"). Accordingly, all named Respondents other than Tracy Johns should be **DISMISSED**.

See e.g., Farmer v. Brennan, 511 U.S. 825 (1994). Habeas actions, in contrast, are those that explicitly or by necessary implication challenge a prisoner's conviction or the sentence imposed on him by (or under the administrative system implementing the judgment of) a court. Thus, for example, when a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim. See e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994). Michel's allegations concerning cruel and unusual punishment and the right to practice his religion contest the conditions of his confinement and are not cognizable pursuant to 28 U.S.C. § 2241. Accordingly, these portions of Michel's Petition should be **DISMISSED** without prejudice.

## II. Whether Michel Exhausted his Administrative Remedies

Respondents also assert, to the extent the Court construes any of Michel's claims as being brought properly via his Section 2241 Petition, his claims nevertheless are subject to dismissal because he failed to exhaust his administrative remedies before he filed his Petition. (Doc. 13, p. 6.)

The Court finds that a discrete portion of Michel's Petition—that portion seeking the restoration of good conduct time—falls within the purview of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (finding that the sole remedy in federal court for a prisoner seeking restoration of good time credits is the writ of habeas corpus). Thus, the Court must determine whether Michel exhausted his administrative remedies as to this sought-after relief.

"[P]risoners seeking habeas relief, including relief pursuant to [28 U.S.C.] § 2241," must exhaust all available administrative remedies. Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004). If a petitioner fails to exhaust his administrative remedies before seeking redress in the federal courts, the court should dismiss the case for want of jurisdiction. Winck v. England, 327

4

F.3d 1296, 1300 n.1 (11th Cir. 2003) (citing Hernandez v. United States, 959 F.2d 211, 212 (11th Cir. 1992)). "Also jurisdictional is '[t]he general rule . . . that a challenge to agency actions in the courts must occur after available administrative remedies have been pursued.'" Id. (quoting Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001)).

In Porter v. Nussle, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. 534 U.S. 516, 523 (2002). The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 548 U .S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.[4] In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures.[5] (Doc. No. 13, p. 7.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form. (Id.) If the inmate is not satisfied

---

[4] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

[5] The BOP contracts with GEO Group, Inc., to house low security criminal alien inmates at D. Ray James Correctional Facility. (Doc. 13, p. 2.)

with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP related matters.[6] (Id. at pp. 7–8.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (Id. at p. 8.) If an inmate files an administrative remedy concerning a BOP related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. (Doc. 13-1, p. 7.)

Here, the evidence before the Court reveals that Michel did file an administrative remedy regarding the appeal of the disciplinary sanctions he received. However, Michel filed this administrative remedy request on December 2, 2014, (doc. 13-1, p. 37), which was after he filed his Petition on November 14, 2014. (Doc. 1.) This remedy was rejected because Michel did not use the appropriate appeal form and because he did not use a separate form for each separate issue he wished to appeal. (Doc. 13-1, p. 37.) Michel had not resubmitted his appeal as of February 11, 2015, the date of Respondents' Response. (Doc. 13, p. 8.) It is apparent Michel failed to exhaust his administrative remedies prior to filing his Petition, and, therefore, this portion of his Petition should be **DISMISSED** without prejudice.

## III.   Leave to Appeal *In Forma Pauperis* and Certificate of Appealability

The Court should also deny Michel leave to appeal *in forma pauperis,* and he should be denied a Certificate of Appealability ("COA"). Though Michel has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Thomas v. Crosby, 371 F.3d 782, 797 (11th Cir. 2004) (Tjoflat, J., specially concurring) ("A district court may *sua sponte* grant or deny a COA at the same time it rules on the merits of a habeas petition or rejects it on procedural grounds. This is arguably the best time for a district

---

[6] Examples of BOP related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, and removal or disallowance of good conduct time. (Doc. 13, p. 6.)

6

judge to decide this matter because the issues are still fresh in [the district court's] mind."); Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal); Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a Certificate of Appealability is issued. A Certificate of Appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a Certificate of Appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a Certificate of Appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Michel's petition and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that Michel's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241 be **DISMISSED**, without prejudice, and this case be **CLOSED**. I also **RECOMMEND** that Michel be **DENIED** a Certificate of Appealability and be **DENIED** *in forma pauperis* status on appeal.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Michel and Respondents.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 28th day of August, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA